**AFFIRM; and Opinion Filed April 22, 2015.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-01200-CR

**BOBBY CARL SCHULE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-80586-2012**

## OPINION

Before Justices Fillmore, Schenck,[1] and Thomas[2]
Opinion by Justice Fillmore

A jury found appellant Bobby Carl Schule guilty of second-degree felony aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) & (b) (West 2011). The jury assessed punishment of twelve years' confinement. In three issues, Schule contends the evidence is legally insufficient to support his conviction because no rational jury could have found against him on his self-defense claim; the driver of the vehicle at which Schule fired a pistol was the first aggressor, and the trial court erred by excluding evidence of specific acts of violence and aggression of the other driver; and the trial court erred by failing to instruct the jury on the

---

[1] Justice Michael J. O'Neill, who was on the panel and participated in the submission of this case, retired December 31, 2014. Justice David J. Schenck succeeded Justice O'Neill. Justice Schenck has read the briefs and reviewed the record and now serves as a member of the panel.

[2] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

presumption of reasonableness of deadly force in the self-defense paragraphs of the guilt-innocence phase jury charge. We affirm the trial court's judgment.

## Factual Background

Justin Brazil, a passenger in a Ford Taurus driven by Joe Cumpian, sustained a gunshot wound to his head. The gunshot striking Brazil was fired by Schule while he was driving a Ford F-150 pickup truck in the same direction as Cumpian's vehicle on a roadway in Collin County, Texas. The incident of road rage resulted in Schule being charged with aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) & (b).

Cumpian testified that on December 16, 2011, as he was driving home from work with his passenger, Brazil, Schule's truck pulled out of a gas station onto Highway 380 at Airport Drive directly in front of Cumpian's vehicle, and Cumpian, traveling eastbound, swerved into the passing lane of a two lane divided highway to avoid a collision. According to Cumpian, Schule's truck moved into the left lane behind Cumpian's vehicle. "Just to irritate" the driver of the pickup truck, Cumpian remained in the left lane staying even with another vehicle in the right lane so that Schule's truck could not pass Cumpian's vehicle. Schule followed closely behind Cumpian's vehicle and flashed his bright lights. Cumpian maintained his lane position preventing Schule's truck from passing for about five miles, and Schule continued to flash his lights.

Brazil was asleep in the front passenger seat. Cumpian awoke him and said, "This guy is flashing his lights. Once I get closer to Princeton, I'm going to pull over. See if he pulls over with us." Cumpian testified he wanted Schule's truck to pull over so that he could talk to the driver and "see what his issue was." As Cumpian approached Princeton, he passed the vehicle he was traveling next to and pulled into the right lane of eastbound traffic. Schule's truck then pulled behind Cumpian's vehicle in the right lane of traffic and continued flashing his lights.

Schule's truck remained behind Cumpian's vehicle all the way into Princeton. Cumpian signaled a right turn into a car wash "just to see if he was going to follow me in there." Schule's truck moved into the left lane and an object Cumpian believed was a drink can was thrown from Schule's truck at Cumpian's vehicle but did not hit Cumpian's vehicle. Instead of turning into the car wash, Cumpian continued traveling eastbound on Highway 380.

For a relatively short distance, Cumpian followed Schule in the right lane of eastbound traffic. According to Cumpian, as the vehicles approached a traffic light at the intersection of Second Street, Cumpian moved into the left eastbound lane and pulled up beside Schule's truck. Schule and the passenger in his truck, his son Christopher, were "yelling stuff back and forth." Another drink can was thrown from Schule's truck that hit, but did not break, the windshield of Cumpian's vehicle. Brazil rolled down his window and threw a can of soda retrieved from the backseat at Schule's truck. Brazil threw a closed three-inch pocket knife retrieved from the console cup holder out the window that hit below the driver's side window of Schule's truck. The traffic light at Second Street turned green, and Cumpian drove on. At the traffic light at the intersection of Fourth Street, Cumpian drove into the middle of the intersection and stopped. Schule's truck was approaching, and Cumpian indicated he moved his vehicle so that it straddled the right and left eastbound lanes to prevent Schule's truck from moving beside him. As Schule's truck was approaching, the traffic light turned green, and Cumpian proceeded eastbound on Highway 380. Schule's truck was three to four car lengths behind Cumpian's vehicle as Cumpian accelerated away from the traffic light. Cumpian testified that he felt something "bang" on the back of his vehicle, and he slowed to determine if an item had been thrown from Schule's truck. Brazil reached into the backseat to get another can of soda to throw at Schule's truck. According to Cumpian, his vehicle was traveling at forty to fifty miles per hour and Schule's truck sped up to seventy or eighty miles per hour to pass Cumpian's vehicle.

As they were passing Princeton High School, Cumpian saw a gun being held outside the driver's window of Schule's truck. Gunshots then broke the rear window and the right rear passenger window of Cumpian's vehicle. Cumpian indicated another gunshot hit the body of his car. Cumpian testified he did not have a gun in his vehicle and did not fire a gun in this incident.

Cumpian grabbed Brazil by his shirt collar, pulled him down, and steered his vehicle into oncoming traffic to get away from Schule's truck. He then drove his vehicle to the shoulder on the right side of the road. Cumpian exited his vehicle. When Brazil did not respond to Cumpian screaming his name, Cumpian ran to the passenger side of the vehicle. Cumpian testified that he could see blood coming from the back of Brazil's head, and Brazil was nonresponsive.

Cumpian called 9-1-1 for assistance, and a recording of the telephone call was played for the jury. On that recording, Cumpian told the 9-1-1 operator that "[t]hese guys drove by my car and opened fire" and Schule's truck "pulled up next to me and started shooting into my car." Cumpian informed the operator that his friend had been shot in the head. Cumpian described Schule's truck and the four-wheeler and hunting gear in the truck bed.

Brazil testified that on the evening of December 16, 2011, he was riding home from work in a vehicle driven by Cumpian. Brazil had dozed off and he believed his seat was slightly reclined. At the intersection of Airport Boulevard and Highway 380, he awoke to some "commotion," screaming, and erratic driving. He recalled Schule's truck moving in front Cumpian's vehicle and braking hard. According to Brazil, Cumpian and Schule were driving erratically back and forth and acting foolish.

Cumpian and Schule were still driving erratically when Cumpian awoke Brazil, who had apparently dozed off again, and said, "Brazil, we're going to pull over and beat them up." Cumpian attempted to get Schule to pull off of the road at the location of a car wash, but Schule did not leave the roadway. As Schule's truck passed Cumpian's vehicle on the left, the

–4–

passenger window of Schule's truck came down, and "they started throwing beer bottles at us," with a beer bottle barely missing the roof of Cumpian's vehicle. Cumpian drove on, and Cumpian's vehicle and Schule's truck continued driving erratically until they reached a red light at the intersection of Second Street in Princeton. Cumpian's vehicle was in the left lane and Schule's truck was in the right lane. Brazil threw a soda can at Schule's truck that hit the driver's side rear passenger window. Cumpian threw a closed pocket knife that hit Schule's truck. After leaving the traffic light at the intersection of Second Street, nothing else was thrown from Cumpian's vehicle. Cumpian's vehicle proceeded to the traffic light at the intersection of Fourth Street. Schule's truck was in the left lane, and Cumpian's vehicle was in the right lane. Cumpian's vehicle traveled into the intersection, and Cumpian had to back up to get out of the intersection. Cumpian said "somebody was waving a pistol." When the light changed, Cumpian sped away from the intersection smoking his tires. He got in front of Schule's truck and moved into the left lane traveling at about forty to fifty miles per hour.

As they were passing Princeton High School, Brazil heard a noise and thought Cumpian's vehicle had run over something. Cumpian said, "Hey, hey, he's shooting." A second gunshot went through the back window of Cumpian's vehicle, and a third gunshot hit Brazil in the side of his head. When Brazil saw Schule's truck after the gunshots were fired, the truck was in the right lane approximately a car length behind Cumpian's vehicle, which was in the left lane.

Brazil testified that after he was shot, he knew Cumpian's vehicle was stopped and heard Cumpian on a phone frantically indicating Brazil had been shot in the head by a "road rager." Brazil was transported by helicopter to a hospital where he was in a coma for several days. Brazil's medical records were admitted in evidence. Brazil testified regarding the residual physical problems he experienced as a result of the gunshot wound, including severe paralysis of one of his hands.

Sergeant Mitchell Sellman of the Collin County Sheriff's office testified that on December 16, 2011, he was on call and notified of a shooting. He spoke with Sergeant Phillip Pannell and learned there had been a road rage incident that began in McKinney around Airport Road and Highway 380 and ended with an individual being shot near Princeton High School on Highway 380, and that the suspect's truck had been stopped in Farmersville. After Schule was taken into custody, Sellman conducted a custodial interview of Schule. Schule told Sellman he was under the impression he had been fired upon. In the videotape of Schule's custodial interview by Sellman and Texas Ranger P.A. Davidson, which was admitted in evidence and played at trial, Schule stated on the evening of December 16, 2011, he and Christopher were traveling in his truck to his Linden property to go hunting. He stopped at a gas station on Highway 380 to refuel. Turning right to exit the gas station, Schule "eased over" into the right lane of Highway 380 with his blinker activated.

Schule described Cumpian's vehicle as weaving in and out of traffic, and what caught Schule's attention about Cumpian's vehicle was how sporadically it was maneuvering through traffic and speeding around Schule's truck. Schule went around Cumpian's vehicle to try to get away from Cumpian. Schule was in the right lane, and Cumpian's vehicle passed him at sixty to sixty-five miles per hour in a forty to fifty mile per hour zone. Schule stated he would move out of the way of Cumpian's vehicle, and Cumpian's vehicle would then move in front of him. At one point, Cumpian's vehicle moved in front of Schule's truck and slammed on its brakes, almost coming to a complete stop. Schule passed Cumpian's vehicle at that point, and Schule tried to get away from Cumpian because he was driving recklessly. Schule told Christopher the situation was bad and Cumpian was dangerous, and Schule questioned what could have caused Cumpian to "be like this." Schule saw only Cumpian and did not see a passenger in Cumpian's vehicle. Schule stated he was getting mad, but he was more concerned and scared.

As they were entering Princeton, the confrontation began, with Cumpian screaming and yelling out his window, waving his hand, and telling Schule to pull over. Schule was trying to stay out of Cumpian's way. At a traffic light in Princeton, Cumpian's vehicle pulled beside Schule's pickup truck; Cumpian was yelling. Schule never saw a gun in Cumpian's hand, but Cumpian held his hand out the window with a pointed index finger and a raised thumb resembling a shape of a gun. Schule hoped Cumpian would turn at the traffic light, but he did not. Cumpian's vehicle moved in front of Schule's truck and slammed on his brakes. Schule sped up to get away from Cumpian's vehicle. While Schule's truck was traveling in the left lane, Cumpian passed the truck in the center turn lane. Schule stated that as Cumpian passed Schule's truck, it felt like Cumpian shot or threw something at us, because something loudly impacted the driver's side of Schule's truck. Schule tried to stay behind Cumpian's vehicle, but Cumpian's vehicle again pulled into the center turn lane while Schule was traveling in the left lane. Schule thought Cumpian "was going to do something again, like shoot at us again." Schule stated Christopher was panicking, ranting and raving in disbelief that Cumpian was "acting like this," and saying "I heard something hit the side of the truck" and Cumpian "shot at us."

That is when Schule decided to "pull" his firearm "in case this is going to go worse and worse." Schule reached behind his seat for the case holding his .40 caliber pistol. Schule opened the case, removed the pistol from its holster, and "racked" the slide to load a bullet in the chamber. Schule, who is right-handed, rolled down his window and transferred the pistol from his right hand to his left hand. With his left hand, Schule fired what he recalled were two gunshots over the driver side door mirror of his truck. Cumpian's vehicle was in front of Schule's truck, and Schule was aiming at a tire of Cumpian's vehicle. Schule did not think any shot he fired hit Cumpian's vehicle. Schule believed the pistol he fired holds fifteen rounds of

–7–

ammunition and there were nine rounds of ammunition in the magazine of the pistol when he left his home that day.

Cumpian did not pursue Schule's truck, and Schule guessed Cumpian stopped in the center turn lane. Schule then put his handgun down and continued to drive east on Highway 380. Christopher said they should pull over, but Schule did not know what to do. Schule did not call 9-1-1 because his cellphone battery had been going dead before he left his house and he planned to recharge it when he reached their destination, and Christopher's cellphone was not working. Schule eventually was stopped by the police.

Schule wrote a statement that was admitted in evidence. Schule's statement contains the following recitation of events following his entry onto Highway 380 after refueling his truck:

> I observed [Cumpian's vehicle] coming fast behind us and proceeded to pass our vehicle. [Cumpian's vehicle] passed us and moved from lane to lane then [Cumpian's vehicle] got in traffic and we passed it and then it came around our vehicle on the left side in the turning lane and pulled in front of us and hit the brakes. We moved over to the next lane and [Cumpian's vehicle] proceeded to pass us again and this time the driver had the window down pointing his hand or finger yelling at us and proceeded to drive recklessly to the driver side from the passenger side of [Cumpian's] vehicle and then it sounded like a gun shot or something hit our vehicle. I then reached for my weapon in the back seat while [Cumpian's] vehicle was in the left lane and fired shots at the rear tire[.] [Cumpian's] vehicle stoped [sic] in the turning lane and we proceeded. My phone battery was dead and Chris's had been turned off just today or we would have called for police assistance. Then a police vehicle stoped [sic] us and held us for questioning.

At the end of the custodial interview, Davidson told Schule that a passenger in Cumpian's vehicle sustained a gunshot wound and was at the hospital in surgery. Schule then inquired, "Where does that put me?"

Abigail Brown testified that about 8:30 p.m. on December 16, 2011, when entering and proceeding eastbound on Highway 380, Cumpian's vehicle and Schule's truck approached her vehicle quickly. Brown was traveling in the right lane, and Cumpian's vehicle passed her in the left lane. Schule's truck then passed her in the left lane. Cumpian's vehicle moved into the right

–8–

lane ahead of Brown, and Schule's truck then moved into the right lane behind Cumpian's vehicle following very closely. Brown testified Schule was driving very aggressively and "almost cut [her] off to get behind" Cumpian's vehicle. She could not tell if Cumpian's vehicle was trying to lose Schule's truck, which was behind it, or whether Cumpian was hitting his brakes to be aggressive as well. Schule's truck made her more uncomfortable because it positioned itself very close behind Cumpian's vehicle a couple of times, swerving back and forth within a foot of the rear of Cumpian's vehicle. As they traveled eastbound, "they went back and forth, from the white truck being behind the red car, to just back and forth, back and forth."

Brown observed the two vehicles as they traveled through Princeton. She testified Cumpian's vehicle slowed in front of Schule's truck a couple of times and turned the wheels as if it was going to turn right as the vehicles drove through town. Near a gas station, it appeared Cumpian's vehicle was going to pull over or turn right. At that point, Schule's truck was in the left lane. Schule's truck moved in front of Brown's vehicle, and it appeared Schule's truck was going to follow Cumpian's vehicle, but Cumpian's vehicle moved back out onto the roadway.

Brown saw some cans hit the ground, but she did not know from which vehicle the cans were thrown. She did not see any item hitting Cumpian's vehicle or Schule's truck. At one point in the middle of Princeton when Cumpian's and Schule's vehicles were adjacent to one another, she believed the occupants of the vehicles were talking to or yelling at each other. She never saw or heard gunshots. She saw flashes but she did not know what they were.

Brown turned left just past Princeton High School. Cumpian's vehicle and Schule's truck were about seventy-five yards ahead of her. Brown was in the process of calling 9-1-1 because the vehicles were driving so recklessly, when Cumpian's vehicle pulled into the center turn lane of the roadway. Because the incident appeared to be over at that point, she did not call 9-1-1 to report the reckless driving. However, about a week later she saw a news article about a road rage

incident, and she realized that the two vehicles described in the news article were the vehicles she had seen. Brown contacted the Princeton Police Department to inform the police that she had seen the vehicles during the incident. After the incident, Brown told an investigator that she had no way of discerning whether Cumpian's vehicle or Schule's truck was the aggressor.

The jury also heard testimony from Joseph Kevin Braswell who witnessed a portion of the road rage incident. On December 16, 2011, Braswell and his wife were traveling on Highway 380 at Airport Road when Braswell saw Cumpian's vehicle and Schule's truck traveling ahead of him at a high rate of speed. The situation reminded Braswell of teenage drivers racing or "playing." As their vehicles approached Princeton, Braswell observed the two vehicles passing each other; Cumpian's vehicle and Schule's truck were "racing back and forth and cutting each other off." Braswell observed Schule's truck move from behind Cumpian's vehicle to beside Cumpian's vehicle, and something that resembled a can was thrown from the passenger side of Schule's truck in the direction of Cumpian's vehicle. The object did not hit Cumpian's vehicle. Schule's truck then moved in front of Cumpian's vehicle.

After Braswell saw the object thrown from Schule's truck, Cumpian's vehicle and Schule's truck continued passing and cutting off one another until they reached the intersection of Fourth Street. In his opinion, Cumpian's vehicle was not trying to get away from Schule's truck. Cumpian's vehicle was behind Schule's truck as they were approaching the Fourth Street intersection. The traffic signal turned yellow, and Schule's truck slowed to stop. Cumpian's vehicle moved in front of Schule's truck and slammed on its brakes. Braswell presumed this was to stop at the traffic light. Because Cumpian's vehicle had proceeded into the intersection before stopping, it had to back up to move out of the middle of the intersection; Cumpian's vehicle backed into the right lane in front of Schule's truck. At that intersection, Braswell turned left onto Fourth Street and did not observe the vehicles further. Sometime later, Braswell contacted

the Princeton Police Department and made a statement regarding the incident. He had heard that the incident started as road rage, and that did not surprise him.

Lieutenant Robert Michnick of the Princeton Police Department testified that at about 8:30 p.m. on December 16, 2011, he received a communication from "Collin County dispatch" about a "road rage incident that was coming through" Princeton, that shots had been fired, and an individual had sustained a gunshot wound. The vehicles involved were traveling east on Highway 380 from McKinney and had traveled through Princeton and were on the east side of Princeton near Princeton High School by the time the radio dispatch was received.

East of Princeton High School on Highway 380, Michnick saw Cumpian's vehicle on the side of the road. The rear window and the right rear passenger door window had been "shot out." Cumpian waved Michnick down and told him Brazil had been shot. Brazil appeared to be unconscious with a large wound to the upper portion of his head. Cumpian provided Michnick a description of Schule's truck and the four-wheeler and camping gear in the bed of the truck. Cumpian indicated Schule and Christopher were wearing camouflage attire. Michnick broadcast that information over the radio, advising that Schule's truck was last seen traveling eastbound on Highway 380.

Cumpian told Michnick that they were traveling eastbound on Highway 380 and "got in a road rage incident with [Schule's truck] where items were kind of thrown back and forth." Cumpian specifically mentioned "Coke cans and a knife and things" being thrown. Michnick found the "locked-blade knife" in the roadway just west of Second Street in Princeton. The knife was "like a pocket knife." Michnick testified that any knife is dangerous, and a knife could be considered a deadly weapon. A photograph admitted in evidence shows a container of canned sodas in the back seat of Cumpian's vehicle. Three bullet shell casings were located in the area of the intersection of Highway 380 and Boorman Lane, which is east of Princeton High School

–11–

on the outskirts of Princeton. Michnick believed the shell casings were .40 caliber and that a .40 caliber handgun was recovered from Schule's truck. Based on Michnick's observations of Cumpian's vehicle at the scene, including broken windows, apparent projectiles lodged in the dashboard, and the front windshield area, Micknick testified that gunshots would have come from behind Cumpian's vehicle.

Sergeant Thomas L. Anderson of the Texas Highway Patrol testified that on December 16, 2011, he heard a couple of radio broadcasts about a road rage incident involving gunshots. A broadcast indicated one of the vehicles had stopped near Princeton High School, and the other vehicle, a white Ford F-150 with camping gear and a four-wheeler in the bed of the truck, continued traveling eastbound in Anderson's direction. Anderson saw Schule's truck traveling eastbound on Highway 380, followed it for approximately three-quarters of a mile, and then stopped the vehicle. Anderson interpreted Schule's "body language" upon exiting his truck as exhibiting irritation, although Anderson acknowledged Schule was cooperative and that the videotape of the stop made by his patrol vehicle dashboard camera confirmed that cooperation. Anderson remembered hearing that Schule state that "the people in the other vehicle shot at them first." On the videotape of the stop played at trial, Schule stated, "He shot first. I don't know what he shot, but it hit the side of my truck."

Princeton Police Department Sergeant Phillip Pannell testified that he participated in the investigation of the December 16, 2011 incident. He was called to the location of Schule's truck and searched the vehicle, collected evidence, and took photographs. There was a .40 caliber pistol in the truck, and the magazine in the pistol was empty. Pannell believed the magazine could hold sixteen bullets, although he was not able to testify as to how many shots Schule fired. Pannell was aware that three bullet shell casings were recovered.

In his report, Pannell stated Schule was fully cooperative and gave consent for police officers to search his truck for evidence. An uncharged cellphone was located in the bottom of the truck's console. Parnell testified that a photograph of Schule's truck, which was admitted in evidence, appears to show fluid may have run down the exterior of the truck. Pannell's report stated there was a defect in the windshield of Schule's truck, and Pannell testified the defect may have resulted from the impact of a pocket knife striking the windshield. Other than the defect in the truck's windshield, Pannell did not recall any major damage to Schule's truck.

Pannell briefly went to the location of Cumpian's vehicle at the intersection of Highway 380 and Boorman Lane. According to Pannell, the distance between the traffic light at Second Street and Boorman Lane is approximately seven tenths of a mile. Photographs of Cumpian's vehicle admitted in evidence showed the rear window and right rear passenger window broken out, as well as what appeared to Pannell to be a bullet hole in the shattered windshield. To Pannell, it appeared that the shots were fired from a gun located behind Cumpian's vehicle, such that a bullet went through the rear window and a bullet went through the rear passenger window, resulting in both of those windows being broken out.

In his report, Pannell stated that both drivers could have prevented this incident. Pannell testified he understood that a person acting based on an apprehension and fear of danger has a right to self-defense under the law. In his report, Pannell stated it could not be proven Schule did not intentionally and knowingly shoot at Cumpian and Brazil. At trial, Pannell testified that from the facts, it could not be proven Schule was "actually shooting at somebody, just a vehicle." In Pannell's opinion, firing a gun from a moving vehicle on a road occupied by other vehicles was reckless. Pannell was aware Cumpian admitted "we threw a knife" and "we were throwing full, unopened Coke cans" at Schule's truck. In Pannell's opinion, a knife thrown at a vehicle with a partially opened window possibly could be considered a deadly weapon.

–13–

The jury heard the testimony of Schule's work supervisor, Todd Childress, and neighbor, Ronnie Cox. Childress testified Schule has a reputation in the community, and Cox testified Schule has a reputation in the neighborhood, as a peaceful individual.

A jury found Schule guilty of second-degree felony aggravated assault, *see* TEX. PENAL CODE ANN. § 22.02(a)(2) & (b), and assessed punishment of twelve years' confinement. Schule's motion for new trial was overruled by operation of law. He filed this appeal.

### Sufficiency of the Evidence

In his first issue, Schule asserts the evidence is insufficient to support his conviction for aggravated assault. Schule argues no rational factfinder could have found against him on his claim of self-defense. The State responds that Schule, by his own admissions, committed aggravated assault with a deadly weapon, and his statements undermined any claim that he reasonably believed deadly force was immediately necessary to protect himself from the use or attempted use of unlawful deadly force.

When an appellant urges a sufficiency challenge on the basis of his claim of self-defense, we do not look to whether the State presented evidence that refuted a theory of self-defense. Instead, we determine, after viewing all the evidence in the light most favorable to the verdict, whether any rational fact finder (1) would have found the essential elements of the offense beyond a reasonable doubt, and (2) would have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury, as the fact finder, is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of evidence."). We defer to the jury's determinations of credibility, and may not substitute our

–14–

judgment for that of the jury. *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Our duty is to ensure the evidence presented supports the jury's verdict and the State has "presented a legally sufficient case of the offense charged." *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

The initial burden to produce evidence supporting self-defense rests with the defendant. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton*, 804 S.W.2d at 913. Once the defendant produces some evidence, the State then bears the ultimate burden of persuasion to disprove the raised defense. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14. This burden of persuasion does not require that the State produce evidence refuting self-defense, but it does require that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913. The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913–14. If the jury finds the defendant guilty, then it implicitly finds against the defensive theory. *Id*. at 914.

A person commits the offense of aggravated assault if he commits assault as defined in section 22.01 of the penal code and uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a)(2). In relevant part, under section 22.01(a)(1) of the penal code, a person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another. . . ." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2014).

Schule admitted he fired his pistol at the back of Cumpian's vehicle at least twice while driving down a highway at night. Pannell testified that firing a gun from a moving vehicle on a road where there is other traffic would be reckless. Viewing the evidence in the light most favorable to the verdict, the jury could have rationally concluded beyond a reasonable doubt that

–15–

Schule was aware of the risk that the driver of or a passenger in the vehicle at which he was shooting could be injured, and it undisputed Brazil sustained bodily injury from a shot Schule fired. We conclude a rational jury could have found all essential elements of the offense of aggravated assault beyond a reasonable doubt.

Schule does not argue that any element of aggravated assault was not proven by the State. Instead, Schule argues no rational jury could have found against him on his claim of self-defense. Therefore, we turn to whether a rational jury could have rejected Schule's claim he acted in self-defense. It is a defense under the penal code that the conduct at issue was justified. TEX. PENAL CODE ANN. § 9.02 (West 2011). A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id*. § 9.31(a) (West 2011). A person is justified in using deadly force against another if the actor would be justified in using force against another under section 9.31 and when and to the degree the actor reasonably believes that deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id*. § 9.32(a) (West 2011). "Reasonable belief" means "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(42) (West Supp. 2014). "Deadly force" is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id*. § 9.01(3) (West 2011).

Schule argues on appeal that he only shot at Cumpian's vehicle because he "was under attack" and was in fear of the use of unlawful deadly force against him. The jury heard the testimony regarding the events leading to the shooting of Brazil, and as the judge of the credibility of witnesses and weight to be given their testimony, was free to disbelieve the entirety of Schule's version of events, including his statements made while interviewed by Pannell and

Davidson that he and Christopher thought a gunshot had been fired at their truck. *See Dearborn v. State*, 420 S.W.3d 366, 374 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Therefore, Schule's statements do not conclusively prove a claim of self-defense. *See London v. State*, 325 S.W.3d 197, 203 (Tex. App.—Dallas 2008, pet. ref'd) (defendant's testimony alone will not conclusively prove self-defense as a matter of law); *Denman v. State*, 193 S.W.3d 129, 132–33 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (defendant's testimony, by itself, does not prove a claim of self-defense). Further, substantial evidence contradicted Schule's claim of self-defense. Brazil testified he threw a soda can and Cumpian threw a closed pocket knife at Schule's truck at the traffic light regulating the intersection of Second Street and Highway 380. Cumpian testified he drove away from the traffic light at the Fourth Street intersection and was three to four car lengths in front of Schule's truck when Schule fired shots at his vehicle from behind. Schule stated he reached behind his seat to retrieve his pistol, removed the pistol from a case and holster, "racked" the slide to load a bullet in the chamber, transferred the pistol from his right hand to his left hand, and then fired shots with his left hand at the back of Cumpian's vehicle. Schule stated he did not see a gun in Cumpian's hand at any point.

After reviewing the evidence in the light most favorable to the verdict, including evidence the gunshots fired by Schule came from behind Cumpian's vehicle and Schule was speeding up to catch Cumpian's vehicle at the time the shots were fired, we conclude a rational jury could have found beyond a reasonable doubt that the firing of gunshots by Schule was not based on a reasonable belief that deadly force was immediately necessary to protect Schule from the use or attempted use of unlawful deadly force by the occupants of Cumpian's vehicle. *See* TEX. PENAL CODE ANN. § 9.32(a); *Saxton*, 804 S.W.2d at 914.

We have determined a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, and could have found against Schule on the self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Accordingly, we conclude the evidence supporting the jury's finding that Schule is guilty of aggravated assault is sufficient. We resolve Schule's first issue against him.

### Exclusion of Evidence

In his second issue, Schule asserts the trial court reversibly erred in excluding evidence of specific acts of violence and aggression on the part of Cumpian. At trial, Schule proffered evidence of Cumpian's aggravated assault of a friend for which Cumpian received probation, an assault of an ex-girlfriend's father with a brick, an indictment which was dismissed for choking his wife or girlfriend, and Cumpian's postings on Facebook after the incident at issue in this case, including a posting about a fight in which Cumpian was purportedly involved shortly before Schule's trial. Schule contends the acts of violence and aggression were admissible under rule 404(a) and rule 404(b) of the rules of evidence to show Cumpian was the first aggressor in the incident at issue. *See* TEX. R. EVID. 404(a) & (b).

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or principles. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Martinez*, 327 S.W.3d at 736.

When, as here, a defendant is charged with an assaultive offense, the defendant may offer evidence of the victim's character for violence or aggression under either of two theories. *Ex*

–18–

*parte Miller*, 330 S.W.3d 610, 618 (Tex. Crim. App. 2009).[3]  First, the defendant may offer reputation or opinion testimony or evidence of specific prior acts of violence by the victim to show the reasonableness of the defendant's claim of apprehension of danger.  *Id.*  This is referred to as the "communicated character" theory because the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real or not.  *Id.*  Under this theory, the defendant is not trying to prove that the victim is actually violent; rather he is proving the reasonableness of his own self-defensive state of mind.  *Id.* at 619.  Since Schule did not know Cumpian, Schule did not attempt to offer "communicated character" evidence.  Instead, Schule's claim of self-defense relies upon the second theory, which is referred to as "uncommunicated character."  Under this theory, a defendant may offer evidence of the victim's character trait for violence to demonstrate the victim was the first aggressor, *see* TEX. R. EVID. 404(a)(2), however the defendant may do so *only* through reputation or opinion testimony under rule 405(a).  *Miller*, 330 S.W.3d at 619; *see* TEX. R. EVID. 405(a).  A defendant "may *not* offer evidence of the victim's prior specific acts of violence to prove the victim's violent character and hence that the victim acted in conformity with that character trait at the time of the assault."  *Miller*, 330 S.W.3d at 619; *see also* TEX. R. EVID. 404(b); *Torres v. State*, 71 S.W.3d 758, 761 (Tex. Crim. App. 2002); *Mai v. State*, 189 S.W.3d 316, 321 (Tex. App.—Fort Worth 2006, pet. ref'd).

Because a victim's unambiguous, violent or aggressive act needs no explanation, evidence of the victim's extraneous conduct admitted in conjunction with his unambiguous act would have no relevance apart from its tendency to prove the victim's character conformity, and

---

[3] The record indicates the trial court expressed some reservation in admitting the evidence because the evidence sought to be introduced concerned Cumpian's allegedly aggressive acts, rather than acts or behavior of the complainant, Brazil.  However, the court of criminal appeals has concluded  that an act of aggression by the intended victim was admissible under penal code section 19.06 where a third party was shot rather than the intended victim.  *Dixon v. State*, 634 S.W.2d 855, 857 (Tex. Crim. App. [Panel. Op.] 1982).  Moreover, Schule stated he did not know there was a passenger in Cumpian's vehicle, and Cumpian was, therefore, the "intended victim" for purposes of this analysis.  Further, the jury charge addressed Schule's reasonable belief that deadly force was immediately necessary to protect himself from Brazil's or Cumpian's use or attempted use of unlawful deadly force.

thus would be inadmissible. *See* TEX. R. EVID. 404(b); *London*, 325 S.W.3d at 206; *Mai*, 189 S.W.3d at 321. Therefore, before an extraneous act of the complainant will be admissible to support a claim of self-defense, two conditions must exist: 1) some ambiguous or uncertain evidence of a violent or aggressive act by the complaint that tends to show that the complainant was the first aggressor, and 2) the proffered evidence must tend to dispel the ambiguity or explain the complainant's conduct. *Reyna v. State*, 99 S.W.3d 344, 347 (Tex. App.—Fort Worth 2003, pet. ref'd); *see also Torres*, 71 S.W.3d at 762; *compare Reyna*, 99 S.W.3d at 347 (finding complainant's conduct of allegedly flashing his gun at the appellant and shooting appellant first were unambiguous acts of aggression and violence that needed no explanation), *with Torres v. State*, 117 S.W.3d 891, 895–96 (Tex. Crim. App. 2003) (decedent's action of climbing up to the second-story balcony outside a bedroom window, unannounced and uninvited at 6:30 a.m., was an act of aggression that was better understood with additional evidence of prior threats and testimony about prior incident where same person had climbed in a person's window and threatened her), *and Thompson v. State*, 659 S.W.2d 649, 654 (Tex. Crim. App. 1983) (appellant was entitled to establish victim's violent character to explain his ambiguously aggressive conduct of walking toward appellant with his arms outstretched).

For Schule's proffered evidence of Cumpian's specific acts of violence and aggression to be admissible, there must have first been some ambiguous or uncertain evidence of Cumpian's aggression that raised the issue of self-defense and, second, the profferred evidence must tend to dispel the ambiguity or explain Cumpian's conduct. Here, by Cumpian's own testimony, he drove aggressively by getting in front of Schule's vehicle and not allowing it to pass in order to "irritate" Schule. Whether or not Schule perceived Cumpian's indication of an intent to turn into the car wash as an act of aggression or merely pulling away, the jury heard Brazil's testimony of Cumpian's aggressive intent to pull over to fight Schule. The jury also heard the testimony that a

can of soda and a pocket knife were thrown from Cumpian's vehicle and that both items made contact with Schule's vehicle. According to Schule's statement heard by the jury, the impact of the can caused him and Christopher to believe Cumpian had fired at Schule.

On this record, we conclude the aggressive and violent actions of Cumpian were not ambiguous or uncertain and, therefore, the jury needed no further explanation of those acts in order to understand his conduct. Because of the unambiguous nature of Cumpian's conduct, neither the first nor second conditions precedent articulated in *Reyna* are met. Schule's proffered testimony concerning specific acts of violence and aggression on the part of Cumpian had no relevance apart from its tendency to prove Cumpian's conduct was in conformity with his violent character, and is thus inadmissible. *See* TEX. R. EVID. 404(b); *Torres*, 71 S.W.3d at 761. Further, the proffered testimony related to Cumpian's aggravated assault of a friend, an assault of an ex-girlfriend's father, an indictment that was dismissed for choking Cumpian's wife or girlfriend, and Cumpian's postings on Facebook, including a posting about a fight. This testimony related to specific acts of violence and aggressive behavior on the part of Cumpian, not reputation and opinion testimony admissible under rule 405(a) of the rules of evidence. *See* TEX. R. EVID. 405(a); *Miller*, 330 S.W.3d at 619.

The trial court's exclusion of evidence regarding various alleged bad acts and prior misconduct by Cumpian was not "outside the zone of reasonable disagreement." *See Martinez*, 327 S.W.3d at 736; *see also Mai*, 189 S.W.3d at 321 (trial court did not abuse its discretion in disallowing proffered evidence of police officer's extraneous acts of violence, aggression, or aggressive behavior because officer's alleged conduct in the case was unambiguous). We cannot conclude the trial court abused its discretion in exclusion of the proffered evidence of alleged prior acts of violence or aggression on the part of Cumpian. Accordingly, we resolve Schule's second issue against him.

–21–

**Presumption of Reasonableness of Deadly Force**

In his third issue, Schule asserts the trial court reversibly erred by failing to instruct the jury on the presumption of reasonableness of deadly force in the self-defense paragraphs of the guilt-innocence phase jury charge. Schule contends the trial court had a duty to instruct the jury as Schule requested because it concerned the law "applicable to the case." The State argues Schule was not entitled to the instruction because the evidence did not support submission of the instruction, the language of the charge alerted the jury to the presumption, and any error in the omission of the complete presumption of reasonableness instruction was harmless in light of the closing arguments of the parties and because the jury likely would have found that facts giving rise to the presumption did not exist beyond a reasonable doubt.

*Standard of Review*

Our first duty in analyzing a jury-charge issue is to decide whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error exists, we then determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). We determine whether that error requires reversal based on the test set forth in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g). Where, as here, charge error has been properly preserved by an objection to the omission of the instruction or a request for the instruction, we must reverse if the error is "calculated to injure the rights of [the] defendant," *see* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006), that is, whether there was "some harm." *Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003) (citing *Almanza*, 686 S.W.2d at 171)). This standard requires the reviewing court to find that the defendant "suffered some actual, rather than merely theoretical, harm from the error." *Reeves v. State*, 420 S.W.3d, 812, 816 (Tex. Crim. App. 2013). In evaluating whether there was some harm, we consider "the entire jury charge, the state of the evidence, including the contested issues and

weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011)(quoting *Almanza*, 686 S.W.2d at 171).

*Requested Jury Instruction*

At the charge conference, Schule's counsel stated he thought the trial court's charge "correctly defines in the abstract the presumptions that apply in this case with respect to reasonableness." He stated he would "go a step further," arguing, "The law needs to be defined and the law needs to be applied to the facts in this case, so we'd request the implied presumption language that's included in the written request that we tendered" to the court. Schule requested the following instruction be included in the charge on the presumption of reasonableness:

> Under certain circumstances, our law creates a presumption that a person's belief—that the deadly force he used was immediately necessary—was reasonable. A presumption is a conclusion the law requires you to reach if certain other facts exist.

> Therefore, you must find the defendant's belief—that the deadly force he used was immediately necessary—was reasonable unless you find the [S]tate has proved, beyond a reasonable doubt, that the defendant neither knew nor had reason to believe that the person or persons against whom the deadly force was used was committing or attempting to commit the offense of murder or that the defendant provoked the person against whom the deadly force was used or that the defendant, at the time the deadly force was used, was engaged in criminal activity other than a class C misdemeanor that is a violation of a law or ordinance regulating traffic.

*See* TEX. PENAL CODE ANN. § 9.32(b)(1)(C), (2), (3). The trial court overruled Schule's requested instruction.

*Jury Charge*

In its instructions to the jury after the close of evidence, the abstract paragraph of the trial court's charge provided the elements of aggravated assault, and the application paragraph applied those elements to the facts of the charged offense. The trial court also included instructions on the law applicable to a defendant's claim that his use of deadly force was justified

–23–

by self-defense.  *See* TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a).  With respect to the general law

of self-defense, the charge included the following instructions:

> You are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself from the other's use or attempted use of unlawful force.
>
> The use of force against another is not justified:
>
> 1.  In response to verbal provocation alone;
>
> 2.  If the actor consented to the exact force used or attempted by the other;
>
> The term "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.

*See* TEX. PENAL CODE ANN. §§ 9.31(a), (b)(1) & (3); 1.07(a)(42).  Additionally, the instructions

stated that, in the context of a defendant's use of deadly force, a person is justified in using such

force against another:

> 1.  if he would be justified in using force against the other as described above;
>
> 2.  when and to the degree he reasonably believes the deadly force is immediately necessary:
>
>> a.      to protect himself against the other's use or attempted use of unlawful deadly force; or
>> b.      to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

*See* TEX. PENAL CODE ANN. § 9.32(a).

Pursuant to the section 9.32(b)(1)(C), the jury was instructed on the reasonableness

presumption with regard to self-defense as follows:

> The actor's belief that deadly force was immediately necessary is presumed to be reasonable if the actor knew or had reason to believe that the person against whom the deadly force was used was committing or attempting to commit the offense of murder.

*See* TEX. PENAL CODE ANN. § 9.32(b)(1)(C).  Pursuant to penal code section 9.32(c), the jury

was instructed:

A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time of [sic] the deadly force is used is not required to retreat before using deadly force.

*See* Tex. Penal Code Ann. § 9.32(c). The application paragraph instructed the jurors that they should find Schule's conduct was justified and acquit Schule of the offense of aggravated assault if they found and believed from the evidence beyond a reasonable doubt that Schule committed the offense as charged but found or had a reasonable doubt that Schule "reasonably believed the use of deadly force, if any, was immediately necessary to protect himself from Justin Brazil's or Joe Cumpian's use or attempted use of unlawful deadly force, whether real or apparent . . . ."

*Analysis*

In *Villarreal v. State*, 453 S.W.3d 429 (Tex. Crim. App. 2015), the court of criminal appeals assumed without deciding the court of appeals' determination was correct that the trial court erred by failing to give an instruction on the statutory presumption of reasonableness of the defendant's belief that deadly force was necessary to protect himself against the victim's use or attempted use of unlawful deadly force. *Id*. at 432. In the underlying appeal, the San Antonio Court of Appeals reasoned the penal code "requires that a presumption that favors the defendant be submitted to the jury 'if there is sufficient evidence of the facts that give rise to the presumption . . . unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact.'" *Villarreal v. State*, 393 S.W.3d 867, 873 (Tex. App.—San Antonio 2012) (quoting Tex. R. Evid. 404(a)), *reversed*, *Villarreal*, 453 S.W.3d 429; *see Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011)); *see also* Tex. Penal Code Ann. § 2.05(b)(1) (when penal code or another penal law establishes a presumption in favor of defendant with respect to any fact, if there is sufficient evidence of the facts that give rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury unless the court is satisfied evidence as a whole clearly precludes a finding beyond a

reasonable doubt of presumed fact). The court of appeals further reasoned that, "[w]hen a rule or statute *requires* an instruction under particular circumstances, that instruction is 'the law applicable to the case,'" and the trial court "shall instruct the jury" regarding the requirements of the rule. *Villarreal*, 393 S.W.3d at 873 (citing *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008)); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (trial court shall deliver to jury "a written charge distinctly setting forth the law applicable to the case"). The court of appeals noted that a defendant is generally entitled to an instruction on every defensive issue raised by the evidence regardless of the strength of the evidence. *Villarreal*, 393 S.W.3d at 874 (citing *Brown v. State*, 955 S.W.2d 276, 279) (Tex. Crim. App. 1997)). "The fact that the evidence raising the issue may conflict with or contradict other evidence is irrelevant in determining whether a charge on the defensive issue must be given." *Id.* (citing *Gibson v. State*, 726 S.W.2d 129, 132–33 (Tex. Crim. App. 1987)). Applying those rules, the court of appeals concluded there was "some evidence to support each of the three prongs" under penal code section 9.32(b), and, therefore, the trial court erred by omitting a presumption-of-reasonableness instruction. *Id.* at 874–75.

Here, the jury charge did not include Schule's requested presumption-of-reasonableness instruction pursuant to section 9.32(b)(1)(C), (2), and (3). *See* TEX. PENAL CODE ANN. § 9.32(b). There was some evidence at trial suggesting Cumpian provoked Schule. *See* TEX. PENAL CODE ANN. § 9.32(b)(2). There was also some evidence at trial, including Schule's statements that he and Christopher believed Cumpian had shot at them, suggesting Schule had reason to believe Cumpian or Brazil was attempting to commit murder. *See* TEX. PENAL CODE ANN. § 9.32(b)(1)(C). Because there was some evidence to support Schule's requested presumption-of-reasonableness instruction pursuant to section 9.32(b), we conclude the trial court erred by failing to instruct the jury with regard to the presumption-of-reasonableness instruction. *See*

*Almanza*, 686 S.W.2d at 171. We, therefore, turn to a harm analysis to determine if Schule suffered some harm by the failure to so instruct the jury. To determine if Schule suffered some harm, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id*.

Schule's argument regarding harm in failing to instruct the jury on the reasonableness presumption involves the "primary contested issue at trial," that is, whether Schule's "firing shots was justified by self-defense." The jury was instructed the actor's belief that deadly force was immediately necessary is presumed to be reasonable "if the actor knew or had reason to believe that the person against whom the deadly force was used was committing or attempting to commit the offense of murder." *See* TEX. PENAL CODE ANN. § 9.31(a)(1)(C).

The trial court's charge generally instructed the jury on the law of self-defense under section 9.31 of the penal code, and included instructions on the law applicable to a defendant's use of deadly force pursuant to sections 9.32(a) and 9.32(b)(1)(C) of the penal code. *See* TEX. PENAL CODE ANN. §§ 9.31, 9.32(a), & 9.32(b)(1)(c). The charge did not instruct the jury that it must find Schule's belief that deadly force was immediately necessary was reasonable unless the State proved beyond a reasonable doubt that Schule did not know or have reason to believe Cumpian or Brazil were attempting to murder him or Christopher. *See* TEX. PENAL CODE ANN. § 9.32(b)(1)(C); *see also Villarreal*, 453 S.W.3d at 435. The pattern jury charge for the presumption-of-reasonableness instruction provides:

> Under certain circumstances, the law creates a presumption that the defendant's belief—that deadly force he used was immediately necessary—was reasonable. A presumption is a conclusion the law requires you to reach if certain other facts exist.
>
> Therefore, you must find the defendant's belief—that the deadly force he used was immediately necessary—was reasonable unless you find the [S]tate has proved, beyond a reasonable doubt, at least one of the following:

–27–

*[Include only those elements supported by the evidence.]*

1.  The defendant neither knew nor had reason to believe that [the person against whom the defendant used deadly force]—

    a.    unlawfully and with force entered, or was attempting to enter unlawfully and with force, the defendant's occupied habitation, vehicle, or place of business or employment; or

    b.    unlawfully and with force removed, or was attempting to remove unlawfully and with force, the defendant from the defendant's habitation, vehicle, or place of business or employment; or

    c.    was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery; or

2.  The defendant provoked [the person against whom the defendant used deadly force]; or

3.  The defendant, at the time the deadly force was used, was engaged in criminal activity other than a class C misdemeanor that is a violation of a law or ordinance regulating traffic.

If you find the [S]tate has proved element 1, 2, or 3 listed above, the presumption does not apply and you are not required to find that the defendant's belief was reasonable.

Whether or not the presumption applies, the [S]tate must prove, beyond a reasonable doubt, that self-defense does not apply to this case.

TEXAS CRIMINAL PATTERN JURY CHARGES, DEFENSES 246–47. Had the instruction been properly given to the jury, it would have permitted the jury to disregard the presumption if it found Schule did not know or have reason to believe Cumpian or Brazil was attempting to murder him or Christopher at the time he used deadly force or that Schule provoked Cumpian and Brazil. A complete instruction, therefore, would have permitted the jury to decide that the presumption did not apply to the facts of Schule's case based on circumstances at the time Schule fired his handgun. *See* TEX. PENAL CODE ANN. § 9.32(b)(2); *Villarreal*, 453 S.W.3d at 435.

With respect to the entirety of the charge, this factor does not weigh in favor of a conclusion Schule suffered some actual, rather than theoretical, harm from the trial court's failure to include a complete presumption-of-reasonableness instruction in the jury charge. Here, the instructions alerted the jury that Schule's belief that deadly force was immediately necessary was presumed to be reasonable if he knew or had reason to believe Cumpian or Brazil, as the persons against whom deadly force was used, were committing or attempting to commit murder. *See Villarreal*, 453 S.W.3d at 434. Further, a complete presumption-of-reasonableness instruction would have permitted the jury to decide the presumption did not apply to the facts of this case. *Id*. at 435.

We next consider the state of the evidence. Schule asserts the primary contested issue at trial was whether his exercise of deadly force was justified by self-defense. Applicability of the presumption of reasonableness is dependent upon the evidence that was adduced at trial. *Id*. at 435–36. The jury heard testimony that Schule was driving very aggressively, positioning his truck behind Cumpian's vehicle a couple of times, and swerving back and forth within a foot of the rear of Cumpian's vehicle, which the jury reasonably could have interpreted as violent acts of aggression. The evidence was that the first object thrown in this incident, a can or bottle, was from Schule's truck when Cumpian's vehicle was signaling an intention to turn into the car wash. In his out-of-court statement to the police, Schule indicated he and Christopher thought Cumpian was shooting at them, although he also stated he did not know if Cumpian was shooting at them or had thrown something at his truck. He also stated he never saw anything in Cumpian's hand. The evidence established Schule fired shots at Cumpian's vehicle at a distance of approximately .7 miles from the Second Street intersection where the last items (a can and a closed knife) were thrown at Schule's truck. Cumpian's vehicle had sped away from the traffic light at Fourth Street and was three to four car lengths in front of Schule's truck when Schule

–29–

fired at Cumpian's vehicle, and Schule's truck was speeding to catch up to Cumpian's vehicle when he fired the shots. Further, in his out-of-court statement to the police, Schule indicated that he had to reach behind his seat to retrieve the case in which his pistol was located, remove the pistol from the case and a holster in which it was housed, "rack" the slide to load a bullet in the chamber, transfer the pistol from his right to his left hand, and then fire shots from behind Cumpian's vehicle.

A jury rationally could have determined either that Schule did not believe shooting at Cumpian's vehicle was immediately necessary or that a belief it was necessary to shoot at Cumpian's vehicle was not reasonable. Other than Schule's statement that he thought he had been fired upon, there was no evidence at trial that supported such a belief by Schule. The actions Schule took to fire his gun at a vehicle in front of him that he was speeding to catch undermines a claim of reasonable belief that deadly force was immediately necessary. Further, even if the jury had received the requested instruction on the presumption-of-reasonableness, the instruction would have permitted the jury to disregard the presumption based on a determination Schule provoked Cumpian and Brazil into throwing items at Schule's truck.

We have analyzed the sufficiency of the evidence and concluded there was sufficient evidence for the jury to find the essential elements of aggravated assault beyond a reasonable doubt and to reject Schule's defense of self-defense beyond a reasonable doubt.[4] Considering the evidence and plausibility of the evidence raising the defense, we conclude this factor does not weight in favor a conclusion Schule suffered some actual, rather than theoretical, harm from the

---

[4] *See Davis v. State*, No. 05-13-01759-CR, 2015 WL 556565, at *4 (Tex. App.—Dallas Feb. 10, 2015, no pet.) (mem. op., not designated for publication) (there was no evidence deceased was committing or attempting to commit murder when appellant shot him; rather, evidence showed that although he had threatened appellant two days earlier, deceased slapped appellant's face and was walking away when appellant shot him, and evidence showed deceased had no weapon in his hand at time he was shot; no error in trial court's failing to instruct jury on presumption of reasonableness in the self-defense instruction).

trial court's failure to include a complete presumption-of-reasonableness instruction in the jury charge.

We next consider counsels' closing arguments. Despite the omission of the requested presumption-of-reasonableness instruction, the parties argued their respective positions. The parties' closing arguments addressed their versions of the events and the "primary contested issue" of whether Schule's "firing shots was justified by self-defense.[5]

For example, the State argued to the jury that it had heard two alternating arguments about self-defense, "on the one hand, you're hearing . . . [Cumpian and Brazil] threw a pocket knife, and a pocket knife can be a deadly weapon," and "on the other hand the evidence is [Schule and Christopher] thought they heard gunshots." The State cited Schule's statements that "I don't know if he shot at us or threw something at us. I just heard something hit my car," and argued that, even by Schule's own statement, "he didn't know what was happening. So why is it reasonable for him to believe that shooting somebody was necessary?"

Schule's trial counsel dedicated a substantial portion of his closing argument to the issue of self-defense and the reasonableness of Schule's belief that deadly force was necessary. Schule's counsel argued:

> And don't confuse what the issue is in this case. The issue isn't this foolishness they talk about before the trigger was pulled. . . . The one and only issue for you as a jury in this case is, at the time the trigger was pulled, was it reasonable — would a reasonable person in this defendant's shoes have been reasonable in acting that way. That's the one and only issue, folks. The one and only issue, at the time the trigger was pulled, is this legitimate self-defense?

Schule's counsel further argued:

---

[5] *See North v. State*, No. 11-11-00338, 2014 WL 272455, at *5 (Tex. App.—Eastland, Jan. 24, 2014, pet. ref'd) (mem. op., not designated for publication) (issue was whether there was evidence that at the point in time when appellant shot and killed deceased, he reasonably believed that force was immediately necessary to protect against deceased's use or attempted use of unlawful force and whether there was evidence that at that point in time, appellant reasonably believed deadly force was immediately necessary to protect against deceased's use or attempted use of unlawful deadly force or to prevent deceased from committing murder).

–31–

Our law in Texas says a person is presumed to be acting reasonably if a reasonable person in his shoes, viewing it from his standpoint at the time, would think someone is trying to kill them or attempting to kill them. . . . The law requires that he was presumed reasonable that night. That's the presumption. That's in the Court's charge folks.

\* \* \*

Under our law of self-defense, if you reasonably believe you are under attack with deadly force, then the law allows you to respond with deadly force . . . .

\* \* \*

Folks, I will submit to you that this jury instruction tells you everything that you need to know. "Presumed to be reasonable if the actor knew or had reason to believe that the person against whom the deadly force was used was committing or attempted to commit the offense of murder,["] exactly what Mr. Schule thought. That apparent danger, an individual has the right to protect themselves from apparent danger to the exact same extent he would be — he would have enjoyed if the danger was real.

Finally, Schule's counsel argued, "Go back and watch [Schule's] interview and ask yourself, who was the criminal out there? Who was the first aggressor out there?" His counsel further argued, "I cannot bring you better evidence for a self-defense case than one of the individuals, victims in this case, riding in the other car, telling you, 'We started it, and we were stopping to do it some more.'" Therefore, Schule's counsel referenced the factor of provocation and "first aggressor" in his argument, further alerting the jury to this prong of the presumption-of-reasonableness instruction.

As discussed above, the relevant presumption of reasonableness was not entirely absent from the jury charge; the jury was instructed "[t]he actor's belief that deadly force was immediately necessary is presumed to be reasonable if the actor knew or had reason to believe that the person against whom the deadly force was used was committing or attempting to commit the offense of murder." *See* TEX. PENAL CODE ANN. § 9.31(a)(1)(C). While the State's and Schule's counsels' arguments were not substitutes for a proper jury instruction under section 9.32(b) of the penal code, their arguments emphasized the primary contested issue at trial, that is,

whether Schule's exercising deadly force was justified by self-defense and the reasonableness of a belief on his part that deadly force was immediately necessary. *See Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. (2013). We cannot conclude based on this factor that Schule suffered some actual, rather than theoretical, harm from the trial court's failure to include a complete presumption-of-reasonableness instruction in the jury charge.

The final *Almanza* factor addresses any other relevant information revealed by the record of the trial as a whole. *See Almanza*, 686 S.W.2d at 171. We have reviewed the record and are not aware of any other relevant information that requires our consideration.

On this record, we conclude the trial court's error by failing to include in the self-defense paragraphs of the guilt-innocence phase jury charge a complete presumption-of-reasonableness instruction pursuant to penal code section 9.32(b) caused no actual, as opposed to theoretical, harm to Schule. Accordingly, we resolve Schule's third issue against him.

## Conclusion

Having resolved Schule's issues against him, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

131200F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BOBBY CARL SCHULE, Appellant

No. 05-13-01200-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas,
Trial Court Cause No. 416-80586-2012.
Opinion delivered by Justice Fillmore,
Justices Schenck and Thomas, Retired, participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 22nd day of April, 2015.